**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO. 1:25-cr-90** |
| | : | |
| **PLAINTIFF,** | : | |
| | : | |
| | : | **JUDGE DOUGLAS R. COLE** |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES PHILLIPS,** | : | **SENTENCING MEMORANDUM** |
| | : | |
| **DEFENDANT.** | : | |
| | : | |

Defendant, James Phillips ("James"), through counsel, respectfully submits the following sentencing memorandum. This is a rare case where a defendant had no concept or ideation of criminal intent. James' actions, while technically unlawful, arose from curiosity and an extraordinary intellectual aptitude, not malice or criminal intent. Based on the facts and circumstances of this case, the government and James have entered into a Plea Agreement pursuant to Rule 11(c)(1)(C) and an agreed sentencing disposition of three years of probation. James respectfully submits that this agreed-upon sentence is sufficient but not greater than necessary to meet the purposes of sentencing pursuant to 18 U.S.C. 3553, and requests that this Court impose the agreed-upon sentence.

Respectfully submitted,

*/s/ R. Scott Croswell, III*
R. Scott Croswell, III (0019726)
Attorney for Defendant
8 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 241-5670
Facsimile: (513)929-3473
rscroswell@gmail.com

**MEMORANDUM**

## I. Introduction

The government filed a one count Information against James on September 2, 2025, charging him with Transport of Explosive Materials in violation of 18 U.S.C. 842(a)(3)(A) and 844(a)(1). On September 24, 2025, James pled guilty as charged pursuant to the Plea Agreement with the government, admitting to the elements of the offense, namely: (1) the defendant transported an explosive material; (2) the defendant did so knowingly; and (3) at the time of the transportation, the defendant was not a licensee or a permittee under Title 18, Chapter 40.   Plea Agreement, ¶ 1.

James has cooperated with the government from the outset. James admitted his conduct, timely accepted responsibility, and timely pled guilty to the Information. James also agreed to forfeit the personal property identified in the Plea Agreement. The parties have agreed to a three-year term of probation including one hundred hours of community service, mental health treatment/counseling, and a prohibition on James making or using explosive materials, and; a $100 special assessment. Presentence Investigation Report ("PSR") at p. 2-3, ¶ 8. The government also does not oppose James receiving a two or three level reduction pursuant to U.S.S.G. §3E1.1. *Id.* Based upon the foregoing, and the reasons discussed *infra*, James requests that this Court exercise its discretion under 18 U.S.C. § 3553(a), adopt the recommendation of the parties, and sentence him to a three-year term of probation with the above referenced conditions.

## II. Offense Level and Criminal History

James has no criminal history and this offense does not contain any adjustments for victims, role in the offense, obstruction of justice, etc. Therefore, James has no objection to Probation's offense level calculation, which nets a total offense level of 11. *Id.* at p. 6, ¶ 29.

2

James also has no objection to the PSR's finding of a criminal history score of zero and category of I. *Id.* at p. 7, ¶ 35.

### III. Guideline Provisions

James' total offense level of 11 and criminal history category of I yields a Guideline range of eight to fourteen months imprisonment. *Id.* at p. 10, ¶ 58. See also, U.S.S.G. Sentencing Table. Because the Guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by a sentence of probation that includes a condition or combination of conditions that substitute home detention for imprisonment. PSR at p. 10, ¶ 58.

As discussed, the parties agreed pursuant to the Plea Agreement that probation with conditions is appropriate. *Id.* at p. 10, ¶ 59. The agreed disposition satisfies the Guideline provision. *Id.*

### IV. Character, Life History, and Nature of the Offense

James unequivocally admits that his conduct is serious and takes responsibility for his actions. But, there are unique facts and circumstances in this case that are necessary for the Court to understand in order to appreciate the full context of this case.

James is a gifted, curious, and fundamentally kind twenty-one-year-old young man with no criminal history. He stands before the Court at the beginning of his adult life because of a serious mistake, but a mistake born of misunderstanding, not malice. James' mistake was not having the proper permits or licenses to transport explosive materials – materials that he legally purchased and made himself. James fully recognizes that this was an error. However, he had no intent to commit a crime or to cause harm.

To understand James' actions, you first need to understand James. Attached to this memorandum are character letters from his parents, teachers, clergy, mentors, and friends. These letters, written by those who know him best, provide a consistent and compelling portrait. James

is described as gentle, respectful, cooperative, and non-aggressive. He is not impulsive or reckless by nature. Rather, he is thoughtful, introverted, and deeply motivated by a desire to understand how the world works.

James has demonstrated a lifelong interest in science, engineering, physics, mechanics, and research. He is the second of five children, and both of his parents are PhD chemists. He graduated from Saint Xavier High School in 2022. Prior to this case, James had never been in trouble of any kind. He has never consumed alcohol or marijuana and does not associate with those who do. He has consistently maintained employment, saved his earnings, and conducted himself as a responsible and law-abiding young man.

James' primary passion in life is music, an area in which he is exceptionally talented. As James' mother describes it, "when he hears music, he sees it in color." James taught himself to play piano, and he also plays drums and keyboard. His musical ability is extraordinary. James's personal music mentor is Walfredo Reyes, drummer for the band CHICAGO. As Mr. Reyes explains in his letter to the Court, James is respectful, dedicated, good natured, and consistently conducts himself with integrity. James's long term goal is to earn a living through music and, more importantly, to use his musical talents to make a positive difference in the world.

Although music is James's greatest passion, it is far from his only interest. Because of his parents' professional backgrounds and academic training, James developed an early fascination with mechanics and chemistry and demonstrated exceptional intellectual ability in both fields. As a child, he collected broken appliances from his neighborhood so that he could disassemble them, study their components, and repair them. By the age of ten, James began building his own projects by fabricating parts himself or modifying commercially available items for new purposes. By age eleven, he had begun conducting independent chemistry experiments. What started with a chemistry set received as a Christmas gift quickly evolved into self-directed

research and experimentation designed to observe and understand chemical reactions. In his own words, James remembers that he "used the potassium permanganate provided in the chemistry set to catalytically decompose store-bought over the counter hydrogen peroxide. I then collected the oxygen produced to convert iron two chloride into iron three chloride. . ." James also began expanding into organic chemistry experiments such as "synthesizing artificial flavors and scents from chemicals available at the hardware and grocery store."

These chemistry experiments were encouraged by James' parents and known to every one of James' friends and family. In fact, during James' last year of grade school, his mother set up a private visit to Xavier University's chemistry lab with Barbara M. Hopkins, Chair of the University Chemistry Department. James arrived at the laboratory with a list of experiments that he wanted to try and the names of the chemicals that would be required. Importantly, as Ms. Hopkins notes in her letter, James brought his own personal protective equipment such as a lab coat, safety goggles, and gloves. Ms. Hopkins notes that James, while in grade school, possessed college-level knowledge and understanding of chemicals and proper safety procedures. Safety considerations during experiments were paramount to James then, and that emphasis has remained consistent at all times.

James' ability to safely and successfully conduct various chemistry experiments, combined with his interest in the show MythBusters, eventually caused a foreseeable and natural reaction; James wanted to make an explosive device. This is what unfortunately led James to stand before this Court.

But it would not be correct to say that James was making "bombs." That phrase suggests the deliberate construction of weapons intended to cause harm, which misrepresents what was actually happening. In reality, James was conducting chemical experiments in controlled environments, carefully combining substances to observe their properties and reactions. Some of

these experiments were designed to produce brief, contained incendiary effects, not for destructive purposes, but to study combustion and reactivity. His actions were exploratory in nature, focused on experimenting with and understanding chemical behavior rather than creating destructive devices.

It is also critical to emphasize that James never purchased illegal materials. All components were lawfully obtained, and his actions were driven by scientific curiosity rather than malice. His experiments did not target any person, and he never destroyed property without the consent of the property owner. His conduct involved no violence, threats, or intent to cause harm. He did not act in secrecy, and he consistently took safety precautions. These experiments were not designed to be destructive. They were intended as demonstrations of scientific principles by a young man motivated by learning and intellectual challenge rather than defiance or recklessness.

But, this same intellectual intensity that gave James his remarkable abilities also left him naïvely unaware of how complex and unforgiving federal regulatory law can be, especially to a young person without formal training or guidance. James had no reason to believe that what he was doing was any different than going to Walmart to purchase Tannerite, or that the experiments he watched on MythBusters would be illegal for him to try on his own.

Obviously, this belief was incorrect, and James learned a very hard lesson. He accepted responsibility for his mistake. He does not minimize it. He understands now that federal law draws clear lines regardless of intent, and he deeply regrets crossing them. The experience of arrest, detention in federal custody, prosecution, and standing before this Court has had a profound impact. For a young man who had never been in trouble of any kind, this process alone has been life-altering. As a result, James has ceased all related activities and is committed to full compliance with the law going forward.

### V.  Purposes of Federal Sentencing

Under 18 U.S.C. § 3553(a), this Court is tasked to impose a sentence that promotes respect for the law, provides just punishment, protects the public, and considers the history and characteristics of a defendant. In this case, the agreed upon sentence focusing on supervision, therapy, and accountability, rather than incarceration, would satisfy all of the stated goals of sentencing. Importantly, it would also preserve the future of a young man with extraordinary potential who has the capacity to contribute positively to society.

This Court has discretion not only to punish, but to show wisdom. James admits that he violated the law, but he refuses to let this case define him. He is a young, gifted, first-time offender who made a serious but unintentional mistake. Imposing the agreed-upon sentence that emphasizes mercy, supervision, and lawful redirection would still hold him accountable while allowing him the opportunity to grow into the responsible, successful, and law-abiding adult he will become.

### VI. Conclusion

Again, this is a rare case where a defendant had no intention of violating the law or any idea that he was doing so. James is not dangerous. He never targeted anyone. He never threatened anyone. He has never possessed or expressed hostility or extremist views towards anyone or anything. He never sought to cause fear, destruction, or harm. There was no intent to violate the law, no intent to endanger the public, and no intent to hide wrongdoing. He simply possesses a scientific understanding that far exceeds that of the average person, and he used that knowledge to fuel his hobby but unknowingly violated the law. The conduct was misguided, but it was not malicious. Importantly, now that James understands the seriousness of federal law and the consequences of misunderstanding it, there is no risk of repetition. He is going to live with this felony conviction for the rest of his life. Specific deterrence has already been fully achieved.

James has accepted responsibility for his conduct, and the government has entered into an agreement under which he would receive a sentence of three years' probation subject to specified conditions. James is committed to complying fully with all terms of probation and will readily participate in any treatment or programming the Court deems appropriate. He is prepared to serve his sentence and is genuinely motivated to learn from this incident and move forward in a positive and law-abiding manner with the full support of his friends and family.

Based on the foregoing, Defendant James Phillips respectfully requests that this Court exercise its discretion to accept the agreed-upon disposition in the Plea Agreement and impose a term of three-years of probation.

Respectfully submitted,

*/s/ R. Scott Croswell, III*
R. Scott Croswell, III (0019726)
Attorney for Defendant
8 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 241-5670
Facsimile: (513)929-3473
rscroswell@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this 12th day of January 2026, I electronically filed the forgoing with the Clerk of the United States District Court using the CM/ECF system, which will notify the attorneys of record of such filing.

*/s/ R. Scott Croswell, III.*
R. Scott Croswell, III.

4921-2137-4086, v. 1